IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| ROBERT EUGENE DICKERSON, | ) | Cause No. CV 04-58-H-CSO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| LIZ RANTZ, M.D., Medical Director, | ) | |
| Dept. of Corrections; SPRATHA | ) | |
| RAMAKRISHNA, M.D., Medical Director | ) | |
| Mt. State Prison Infirmary; WILLIAM | ) | |
| SLAUGHTER, Director, Mt. Dept. of | ) | |
| Corrections; and MIKE MAHONEY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On November 16, 2004, Plaintiff Robert Dickerson filed this action alleging violation of civil rights under 42 U.S.C. § 1983. Dickerson is a state prisoner proceeding pro se.

On April 21, 2005, the Court issued Findings and Recommendation, concluding that four Defendants should be dismissed because Dickerson failed to state a claim against them.[1]  At the same time, the Court ordered service of the Complaint on Defendants Rantz and Ramakrishna and on Defendants Slaughter and Mahoney in their official capacities.

---

[1] Those Defendants – Woods, Redfern, Scott, and Beeson – as well as Defendants Slaughter and Mahoney in their individual capacities, were dismissed by Order of Chief Judge Donald W. Molloy on July 26, 2005 (Court's doc. 13).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

On January 30, 2006, Defendants filed a motion for summary judgment and brief in support, along with a Statement of Uncontroverted Facts ("SUF"). They gave Dickerson the notice required by D. Mont. L.R. 56.2 and Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998) (en banc).

Before the Defendants filed their motion for summary judgment, Dickerson had moved the Court to act to compel a court reporter involved in state proceedings against Dickerson to give him a copy of a transcript he said was required to support his claim in this action. See Pl.'s Mot. for Order to Show Cause (Court's doc. 27). Consequently, on February 9, 2006, Dickerson moved for an extension of time to respond to the Defendants' motion. He responded to the Defendants' motion on April 26, 2006, by filing an "Objection and Response," a "Motion of Law in Opposition," and a Statement of Genuine Issues. On May 11, 2006, he moved to withdraw his pending motions for extension of time to respond. The motion to withdraw was granted on May 16, 2006.

On May 8, 2006, Defendants filed a reply in support of their motion for summary judgment. Dickerson filed a "reply" in support of his response on May 18, 2006.

I. **Summary Judgment Standards**

A party is entitled to summary judgment if that party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

law." Fed. R. Civ. P. 56(c). A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Id. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. Anderson, 477 U.S. at 248.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. However, if the evidence is merely colorable or is not significantly probative,

summary judgment may be granted. Id. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

Id. at 252.

In civil rights cases and in the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe the pleadings liberally and to afford the pro se litigant the benefit of any doubt. Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

## II. Dickerson's Allegations

Dickerson alleges that his Eighth Amendment right to adequate medical treatment is being violated by the Defendants' failure to treat him for hepatitis C. He asserts that a drug company was willing to provide him with free drug therapy but that Defendants Rantz, Ramakrishna, and Slaughter refused to permit him to obtain that therapy. See Compl. (Court's doc. 2) at 3-4A.

For his relief, Dickerson seeks an injunction requiring Montana State Prison to begin treating him for hepatitis C, monetary damages, and any other fees or stipulations that the Court deems fair and just. Compl. at 4; Pl.'s Supp. Br. (Court's doc. 2) at 11.

## III. Analysis

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

**A. Legal Standards**

The Eighth Amendment requires that prisoners receive adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Prisoners must also be protected from serious risks to their health. See, e.g., Farmer v. Brennan, 511 U.S. 825, 837 (1994); Helling v. McKinney, 509 U.S. 25, 33-34 (1993); Wallis v. Baldwin, 70 F.3d 1074, 1076-77 (9th Cir. 1995).

However, mere disagreement between a prisoner-patient and prison medical personnel over the need for or course of medical treatment is not a sufficient basis for an Eighth Amendment violation. Franklin v. State of Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981); see also Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinions). The plaintiff must show that each defendant acted with "deliberate indifference" to his serious medical needs. See, e.g., McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing Estelle), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). In other words, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

**B. Merits of the Motion**

Dickerson contends that the Defendants must permit him to receive drug therapy for his hepatitis C infection because it is medically necessary and because he has been offered free drugs by an organization called "Commitment to Care."

Defendants assert that Dickerson is not a good candidate for drug therapy because, in addition to hepatitis C, he has other diseases that compromise his health, including anemia and "continued but mild" liver disease. A liver biopsy in 1991 indicated cirrhosis. See Rantz Aff. (Court's doc. 31) at 2, ¶¶ 7-8. Defendant Dr. Elizabeth Rantz avers that "[p]atients with ... liver disease are excluded from medication treatment because such patients have not been found to respond to medication treatment and because such treatment does not improve their long-term prognosis." Id. at 4, ¶ 15. Dr. Rantz specifically notes that Dickerson's low levels of hemoglobin, which have frequently fallen below the treatment-minimum of 12g percent as a result of his anemia, preclude his treatment with peg-interferon and ribavirin. Dickerson's own medical records, which were attached to his Complaint, bear this out. See, e.g., Compl. Ex. L-1 ("hemoglobin of 5.3" on June 20, 2001); Ex. L-11 (showing "HGB" of 10.1 on Sept. 27, 2001); Ex. L-14 ("His Hgb had been low at 10" on Oct. 22, 2001).

Because Dr. Rantz is a licensed Montana physician as well as a fact witness, this evidence is sufficient to show that it is not

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

medically unacceptable to decline to treat Dickerson's hepatitis C by drug therapy. Consequently, the burden shifts to Dickerson to demonstrate that there is a genuine issue of material fact on this point – in short, to demonstrate that Dr. Rantz's conclusions are medically unacceptable.

Attached to Dickerson's verified Complaint are several exhibits, one of which shows that a Dr. Bradley Zins prescribed peg-interferon and ribavirin for Dickerson on July 2, 2003. See Compl. Ex. F-2. At Dickerson's sentencing hearing in state court on October 15, 2001, a treating physician, Dr. Tim Johnson, testified that Dickerson "should be considered for treatment with Interferon and Ribavirin own [sic] for 24 weeks." Pl.'s Surreply (Court's doc. 41) at 10.[2] On October 23, 2001, Dr. Johnson noted that, "[a]t this point, I think it would be *reasonable* for the [patient] to be treated with peg interferon and Ribavirin." Compl. Ex. L-14 (emphasis added).

In her Affidavit, Dr. Rantz states:

> In July 2003, just days before he was re-admitted to MSP, Mr. Dickerson was seen by Dr. Bradley Zins of Billings. Dr. Zins prescribed peg-interferon and ribavirin to Mr. Dickerson. Upon admission in July 2003, however, the medical professionals at MSP determined he did not

---

[2] Dickerson filed a response, which is properly characterized as a surreply, to the Defendants' reply in support of their summary judgment motion. Surreplies are not permitted. See D. Mont. L.R. 7.1(c)-(g). However, the Court has considered the exhibit. It is an excerpt from the transcript that lay at the heart of Dickerson's motions for extension of time to respond to the Defendants' motion.

receive the medical criteria for medication treatment,
        including peg-interferon and ribavirin.

Id. at 5, ¶ 18.

It is not clear whether the pronoun "he" in the final sentence in ¶ 18 refers to Dr. Zins or Dickerson. If it refers to Dr. Zins, the sentence states that, at the time Dr. Zins prescribed peg-interferon and ribavirin, he did not have any information regarding the medical criteria for treatment with such drugs. That seems to be the only interpretation that makes sense with the verb "receive." If, on the other hand, "he" refers to Dickerson, the sentence simply reiterates that Dickerson did not meet the DOC criteria for hepatitis C treatment. The latter interpretation is grammatically correct because it connects "he" to the immediately preceding proper name, Dickerson, but it must construe the word "receive" as a mistake that should instead read "meet" or "fit."

Ultimately, however, the ambiguity does not change the legal result. One physician's prescription or another's recommendation that something "should be considered" is not evidence that anything other than the prescription or proposed action is medically unacceptable. A "reasonable" course of action is not the same thing as a medically necessary course of action, and it does nothing to suggest that the Defendants' course of action was medically unacceptable.

Dickerson also asserts that an organization called "Commitment

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

to Care" offered to provide him treatment free of charge.  See Pl. Supp. Br. at 2, ¶ 7; Compl. Exs. F-3A, F-3B.  Exhibits F-3A and F-3B appear to be a brochure put out by a drug company, Schering Corporation, offering "reimbursement assistance" to prospective purchasers of peg-interferon and ribavirin.  Presumably "Commitment to Care" is a program to help persons using Schering's drugs obtain reimbursement of their expenses – that is, to help the drug company obtain payment – from third parties, for example, insurance providers or Medicare/ Medicaid.  Whatever the program is, it does nothing to show that Dickerson is not receiving "adequate" medical care if he is not receiving drug therapy.[3]

Dickerson has not adduced any evidence showing that, contrary to Dr. Rantz's contention, patients with liver and other disease that is not related solely to hepatitis C realize significant benefits from drug therapy designed to address hepatitis C.  He offers only his own conclusory allegations that failing to treat him amounts to deliberate indifference to a serious medical need.  Because he has no medical evidence to show that the Defendants' treatment protocol is medically unacceptable, they are entitled to summary judgment.

---

[3]  Evidence of the cost of medication and the plaintiff's ability or inability to pay for it could be relevant to the question of deliberate indifference, but it is not relevant to the question of whether medical care provided by a prison is "adequate" or medically acceptable within the meaning of the Eighth Amendment. That is the central question raised by the Defendants' motion.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

Defendants' motion for summary judgment (Court's doc. 28) should be GRANTED and judgment should be entered by separate document in favor of Defendants and against Plaintiff.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days[4] after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

Plaintiff must immediately notify the Court and counsel for the Defendants of any change of address. Failure to do so may result in dismissal of this case without further notice.

DATED this 31st day of July, 2006.

> /S/ Carolyn S. Ostby
> Carolyn S. Ostby
> United States Magistrate Judge

---

[4] In prisoner cases, this Court extends the time to object to twenty days in order to take into account the Supreme Court's ruling in Houston v. Lack, 487 U.S. 266, 270-71 (1988), and the somewhat greater mailing time that is involved in sending documents into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10